UNITED STATES DISTRICT COURT

DISTRICT OF OREGON


JERMAINE ROBERTS,                                          3:12-CV-01291-MO

        Petitioner,                                 OPINION AND ORDER

  v.

MARION FEATHER,

        Respondent.


JERMAINE ROBERTS
Inmate #11198-030
Federal Correctional Institution
P.O. Box 5000
Sheridan, OR  97378

    *Pro Se* Petitioner


S. AMANDA MARSHALL
United States Attorney
NATALIE K. WIGHT
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR  97204-2902

    Attorneys for Respondent


1 -- OPINION AND ORDER

MOSMAN, District Judge.

Petitioner, an inmate at the Federal Correctional Institution, Sheridan, Oregon ("FCI Sheridan"), brings this habeas corpus action pursuant to 28 U.S.C. § 2241. Petitioner alleges his rights to due process were violated when he was placed in administrative detention during a security investigation and his participation in the Residential Drug Abuse Treatment Program ("RDAP") was interrupted; and when he did not receive written notice of the reasons for his detention within 24 hours of being placed in the segregated housing unit. He further alleges his constitutional rights were violated when he was transferred from FCI Phoenix and placed in a later-graduating RDAP group at FCI Sheridan, unlike some Sheridan inmates who were allowed to rejoin their original RDAP groups when released from segregated housing. Because the Court does not have jurisdiction to review individualized RDAP determinations, and because Petitioner has failed to state a cognizable claim implicating protected liberty interests, Respondent's Motion to Dismiss is granted, and the Amended Petition is dismissed.

## BACKGROUND

I.   Factual Background

Petitioner is serving a 60-month term of imprisonment following his conviction on a plea of guilty to Mail Fraud and Wire Fraud in violation of 18 U.S.C. § 1341 and § 1343. (#16, Attach.

2 -- OPINION AND ORDER

1.)  His full-term expiration date is August 9, 2014; his projected conditional statutory release date upon the successful completion of RDAP is October 9, 2013.  (#16, Decl. at 2; Attach. 2, at 3.)

Petitioner started the RDAP program on or about February 3, 2012, while housed at the Federal Correctional Institution, Phoenix, Arizona ("FCI Phoenix").  His RDAP group was scheduled to graduate on November 2, 2012.  (#10, at 1.)  On February 23, 2012, Petitioner was place in the Special Housing Unit ("SHU") during a security investigation.  (#10, at 2.)  The investigation was inconclusive, but Petitioner was informed by the unit manager that he would remain in the SHU pending a transfer.  (*Id.*)

On March 1, 2012, SHU staff observed an injury under Petitioner's left eye.  (#16, Attach. 5, at 3.)  When questioned about the injury, Petitioner claimed he had been assaulted by his cellmates, whom he identified as Bloods; and he informed staff he was a member of the Gangster Disciples.[1]  (*Id.* at 4-6.) Petitioner's cellmates denied assaulting him and claimed he had fallen while cleaning the cell.  (*Id.*)  Further investigation led BOP staff to conclude Petitioner had been assaulted by his cellmates and to recommend he be transferred to another facility offering RDAP.  (*Id.* at 1.)  Petitioner's RDAP status was changed from "participating" to "incomplete" on March 15, 2012.  (*Id.*,

---

[1]The BOP identifies the Bloods and the Gangster Disciples as security threat groups.  (#15, at 3.)

3 -- OPINION AND ORDER

Attach. 6.)

Petitioner arrived at FCI Sheridan on May 23, 2012. Once he was designated to the general population, he was placed on the list for the first available RDAP group. (#16, at 4; Attachs. 4 & 6.) Petitioner's status was changed to RDAP "participating" on July 12, 2012. (*Id.*, Attach. 6.) It is anticipated that members of Petitioner's Sheridan RDAP group will complete the residential component on or about April 12, 2013, and be eligible for the community corrections component thereafter. (#10, at 2; #16, at 2.)

## II.  Statutory Background

Congress vested broad authority in the BOP to manage federal correctional institutions and the imprisonment of convicted persons. 18 U.S.C. § 4042(a); §§ 3621-3625. In § 3625, entitled Inapplicability of the Administrative Procedure Act ("APA"), Congress specified that §§ 554 and 555 and §§ 701-706 of the APA "do not apply to the making of any determination, decision, or order under this subchapter."[2] The phrase "this subchapter" refers to Subchapter C - Imprisonment, which includes §§ 3621-3625.

In 1990, Congress directed the BOP to provide appropriate substance abuse treatment, and articulated a specific statutory mandate for residential substance abuse treatment programs for

---

[2]Under the APA, § 554 governs Adjudications; § 555 governs Ancillary Matters; §§ 701-706 govern Judicial Review.

4 -- OPINION AND ORDER

eligible prisoners. 18 U.S.C. § 3621(b); § 3621(e). The statute defines residential substance abuse treatment as "a course of individual and group activities and treatment, lasting at least 6 months, in residential treatment facilities set apart from the general prison population ...." § 3621(e)(5). In 1994, Congress enacted the Violent Crime Control Law Enforcement Act ("VCCLEA"), amending § 3621(e) to include a discretionary early release incentive for non-violent inmates who successfully completed RDAP. 18 U.S.C. § 3621(e)(2).

The regulations implementing the residential drug treatment mandate are codified at 28 C.F.R. §§ 550.53-550.56 (2009). Internal agency guidelines are found in BOP Program Statement P5330.11, Chapter Two, Section 2.5-7. Consistent with the statutory definition of residential treatment, the BOP's RDAP includes a 500-hour unit-based component, follow-up services, and no less than 120 days of treatment in community transitional treatment (TDAT). (*Id.*)

## DISCUSSION

In Ground One of the amended petition, Petitioner argues it is arbitrary and capricious, and an abuse of discretion for the BOP to rely exclusively on the number of RDAP sessions he missed in deciding not to reassign him to his original class. (#9, at 8; #10, at 3.) In Ground Two he argues his administrative detention pending a security investigation was illegal and violated his right

5 -- OPINION AND ORDER

to due process because he did not receive written notice of the reasons for administrative segregation within 24 hours of his segregation, and was removed from RDAP without any disciplinary action against him. (*Id*.)  In Ground Three, Petitioner again contends it was a violation of due process when he was removed from RDAP absent any disciplinary action or order from the administrative detention. (*Id*.)  In Ground Four he argues his equal protection rights were violated because other inmates were released from the special housing unit at Sheridan and rejoined their original RDAP classes. (#9, at 9; #10, at 2.)  Petitioner contends his absence from RDAP classes was "not caused by any action or fault on my part[,]" and he should receive credit for the time he was unable to participate due to his administrative detention and transfer, with restoration of the November 2, 2012 RDAP completion date. (#10, at 2.)  Petitioner has also filed a Motion for Summary Judgment (#21) and what the Court construes to be a response in opposition (#24) to the Defendant's Motion to Stay Summary Judgment Proceedings (#23).

Respondent argues Petitioner is not entitled to relief because he failed to exhaust his administrative remedies. (#15, at 9-11.) Respondent also argues the amended petition should be dismissed because Petitioner fails to state a claim implicating protected interests. (*Id*. 4-9.)

6 -- OPINION AND ORDER

I.   Exhaustion of Administrative Remedies

Although exhaustion of administrative remedies is not an express jurisdictional requirement under 28 U.S.C. § 2241, federal prisoners must exhaust their administrative remedies "as a prudential matter" prior to seeking habeas relief. *See Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004); *Castro-Cortez v.INS*, 239 F.3d 1037, 1047 (9th Cir. 2001); *c.f. Hicks v. Hood*, 203 F.Supp.2d 379, 382 (D.Or.2002) (the exhaustion requirement of the Prison Litigation Reform Act ("PLRA") does not expressly apply to petitions filed under § 2241). A court may waive the exhaustion requirement if pursuing administrative remedies would be futile. *Fraley v. U.S. Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir.1993).

A review of the BOP's Administrative Remedy Logs shows Petitioner pursued a number of administrative remedies through to the Western Regional Director without obtaining relief, (#16, Attach. 3 at 2), and that an appeal to the BOP's Office of the General Counsel was rejected as incomplete (#21). While it is not clear that re-submitting the rejected appeal to the Office of the General Counsel would be futile, Petitioner did attempted to fully exhaust his administrative remedies. In the interest of judicial economy, the Court has reviewed Petitioner's claims on the merits.

II.  Individualized Determinations

Petitioner's claims challenge the BOP's individualized

determinations to suspend his participation in RDAP at FCI Phoenix and to enroll him in a later graduating class after he was transferred to FCI Sheridan. The Court lacks jurisdiction to review such determinations. *See* 18 U.S.C. § 3625; *Reeb*, 636 F.3d at 1227-28 (individualized determinations pursuant to § 3621 not reviewable by the district court). To the extent Petitioner alleges he was treated differently from other RDAP participants who were allowed to rejoin their group after time in the SHU, those decision were individualized determinations and there is no evidence the determinations were the result of an improper classification or discriminatory intent. *See McLean v. Crabtree*, 173 F.3d 1176, 1185 (9th Cir. 1999)(exclusion from sentence reduction based on detainers does not violate equal protection).

III. <u>Due Process</u>

The Due Process Clause of the Fifth Amendment provides that no person "shall be deprived of ... liberty ... without due process of law." U.S. Const. Amend. V. To establish a procedural due process claim, a petitioner first must show that he was deprived of a liberty or property interest. *See Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 571 (1972). It is well settled that "[a] prisoner has no liberty interest in remaining at a particular correctional facility." *Meachum v. Fano,* 427 U.S. 215, 225 (1976)). This principle holds true even when "life in one prison

is much more disagreeable than in another." *Id*. Nor does an inmate have a protected liberty interest in being free from administrative segregation because such segregation does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Moody v. Daggett*, 429 U.S. 78, 88 (1976) (discretionary determinations regarding conditions of confinement do not create due process rights). Here, because Petitioner's transfer to the SHU during a security investigation was not atypical of prison life and the interruption in his RDAP participation was not a significant hardship in relation to ordinary incidents of prison life, there was no infringement of a protected interest.

Moreover, it is well established that "inmates do not have a protected liberty interest in either RDAP participation or in the associated discretionary early release benefit." *Reeb v. Thomas*, 636 F.3d 1224, 1229 n.4 (9th Cir. 2012); *see also Jacks v. Crabtree*, 114 F.3d 983, 986 n.4 (9th Cir. 1997)(18 U.S.C. § 3621(e)(2)(B) does not create a protected liberty interest in a one-year sentence reduction.) "The BOP has plenary control, subject to statutory constraints, over 'the place of a prisoner's imprisonment,' § 3621(b), and the treatment programs (if any) in which he may participate, §§ 3621(e), (f); § 3624(f)." *Tapia v.*

9 -- OPINION AND ORDER

*United States*, 131 S.Ct. 2382, 2390-91 (2011). There is nothing in the statutory mandate for residential drug treatment that gives rise to a protected interest in remaining in an RDAP group. Thus, even if the Court liberally construes Petitioner's claim to allege that his brief participation in RDAP at FCI Phoenix gave rise to a protected interest to graduate on November 2, 2012, the claim cannot stand.[3] Moreover, awarding RDAP inmates treatment credit based only on original enrollment dates, regardless of any time missed, would be contrary to the statutory requirement that residential treatment provide "individual and group activities and treatment, lasting at least 6 months...." *See* 18 U.S.C. § 3621(e)(5). In addition to being contrary to the statute, crediting inmates with hours of RDAP participation that they did not complete defeats the purpose of the treatment program.

/ / /

/ / /

/ / /

/ / /

---

[3] While the Court does not find that Petitioner's administrative segregation and the change in his RDAP group assignment give rise to due process claims, the allegation that the BOP failed to adhere to its guidelines that inmates be given written notice of the reasons for administrative segregation "ordinarily within 24 hours," is troubling. *See* 28 C.F.R. §§ 541.23-541.25.

10 -- OPINION AND ORDER

## CONCLUSION

Based on the foregoing, Respondent's Motion to Dismiss (#15) is GRANTED, and the Amended Petition for Writ of Habeas Corpus (#9) is DISMISSED, with prejudice.  Petitioner's Motion for Summary Judgment (#21), and Respondent's Motion to Stay Summary Judgment Proceedings (#22) are, accordingly, denied as moot.

IT IS SO ORDERED.

DATED this __18th__ day of December, 2012.

/s/ Michael W. Mosman
Michael W. Mosman
United States District Judge